COMMONWEALTH *vs.* FRANCIS SCALA.

Middlesex.    April 10, 1979. — August 8, 1979.

Present: HALE, C.J., ARMSTRONG, & DREBEN, JJ.

*Collateral Estoppel. Constitutional Law*, Double jeopardy. *Due Process of Law*, Collateral estoppel. *Search and Seizure.*

Where police officers obtained complaints against a defendant as the result of a seizure of drugs from his apartment and, upon arresting the defendant on the complaints, they found drugs on his person resulting in an indictment charging unauthorized possession of the drugs with intent to distribute, the allowance of the defendant's motion to suppress the drugs seized from his apartment and subsequent acquittal on the complaints in a District Court did not preclude reconsideration of the legality of the apartment search at the defendant's trial on the indictment or prosecution of the indictment. [206-211]

Where police officers, executing a search warrant describing the premises to be searched as an apartment occupying the entire second floor of a building, discovered a stairway in the apartment which was the only means of access to an attic above the apartment, their subsequent search of the attic was proper. [211-212]

INDICTMENT found and returned in the Superior Court on March 1, 1978.

A motion to suppress was heard by *Colicchio,* J., a District Court judge sitting under statutory authority.

The case was tried before *Tisdale,* J.

*Irving H. Sheff* for the defendant.

*James W. Sahakian,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. The defendant appeals from his conviction by a Superior Court jury on an indictment charging the unauthorized possession, with intent to distribute, of twenty packets of amphetamine. Prior to his conviction of this offense in the Superior Court, the defendant had been acquitted of a different drug offense in a District Court. During the course of the earlier proceedings, the District Court judge granted a motion filed by the defendant to suppress certain evidence. This appeal raises, inter alia, the question of the effect to be given in this action to that ruling of the District Court judge.

In the present action the defendant filed a motion to suppress the twenty packets of amphetamine. The motion was denied. The defendant claims that it should have been granted because under the principles of collateral estoppel the prior ruling of the District Court judge is binding and because, in any event, the amphetamine had been illegally seized. He also claims that his motions to dismiss the indictment and for a directed verdict should have been granted. We conclude that there was no error and, accordingly, affirm the conviction.

The facts are taken from evidence presented to the motion judge at the hearing on the motion to suppress the amphetamine in the Superior Court. On October 6, 1977, the Malden police obtained a warrant for the search of "the entire apartment located on the second floor above a business establishment named Vincent's Hair Designs, said building . . . [in Malden] being a two story construction of brick and wood . . . ." The warrant authorized the seizure of specified, allegedly stolen household furniture and also a search of certain persons.

On the same day, October 6, 1977, police officers of Malden and Somerville searched the Malden apartment pursuant to the warrant and found some of the stolen furniture. While in a bedroom, they opened what appeared to be a closet door and discovered a stairway leading to an attic. The only means of access to the attic was through the apartment and that stairway. One of the officers testified that the attic was lighted by a downstairs pull chain, that he went upstairs and saw there an open paper bag containing numerous bottles of drugs.

As a result of the seizure of these drugs in the Malden apartment, the police sought complaints against the defendant and obtained a warrant for his arrest. The defendant was arrested in Somerville pursuant to the warrant on October 7, 1977, and was found to have twenty packets of amphetamine on his person. These packets are the subject matter of the present action (hereinafter referred to as the Somerville felony).

Prior to his trial on the Somerville felony, the defendant was brought before the District Court of Malden on two misdemeanor complaints stemming from the seizure of drugs in the attic during the October 6, 1977, search. In the Malden actions, the defendant filed a motion to suppress the drugs found in the attic, and the motion was allowed. He was found not guilty on one complaint, and the other complaint was dismissed, the District Court judge finding that there was no probable cause.

At the hearing on the defendant's motion to suppress in the Superior Court for the Somerville felony, the defendant argued, as he now argues on appeal, that under the principles of collateral estoppel the Commonwealth is bound by the District Court's ruling that the seizure of the drugs in the attic on October 6, 1977, was illegal.[1] He

---

[1] At the hearing before the motion judge in the Superior Court, both the Commonwealth and the defendant argued that the District Court judge's ruling was based on the illegality of the search in the attic. Since the judge made no findings, and the defendant's motion in the District Court contained a number of contentions, including that there

claimed that since the attic seizure was illegal, all that followed was also unlawful — the arrest warrant which was obtained on the basis of the seizure, the arrest pursuant to the invalid warrant, and the search of the defendant's person incident to his unauthorized arrest. The search of his person being improper, the tainted fruits thereof, namely, the amphetamine packets, must, he argues, be suppressed. The defendant also contends that, even if the principles of collateral estoppel do not apply, the attic is not part of the second floor apartment and on that ground the seizure of the drugs in the attic was illegal.

The motion judge ruled that the District Court judge's decision to allow the defendant's motion to suppress was not a finding of fact but an evidentiary ruling as to which the principles of collateral estoppel do not apply. We agree that the principles of collateral estoppel are not controlling here, but for somewhat different reasons.[2]

Collateral estoppel is a doctrine which developed in civil litigation. Crucial to its application and to the notion of a "full day in court" is the right to appeal. The reason,

---

was no probable cause for the search warrant for furniture, the record does not show the subsidiary findings upon which the ruling of illegality of the seizure of the drugs was made. However, since it is the ruling that the seizure was illegal which is claimed to have preclusive effect in this action, the particular subsidiary findings on which that ruling was based are not important.

[2] Often the admissibility of evidence obtained through a search and seizure is as seriously contested an issue, and will be as determinative of the case, as some factual determination made during trial. For this reason we are inclined to follow those decisions which do not automatically preclude application of the principles of collateral estoppel to rulings on motions to suppress. *State* v. *Doucet*, 359 So. 2d 1239, 1244 (La. 1977), modified on a related issue on rehearing, 359 So. 2d 1245 (1978). *State* v. *Gonzalez*, 75 N.J. 181 (1977). See *Laughlin* v. *United States*, 344 F.2d 187, 189-192 (D.C. Cir. 1965); *United States ex rel. DiGiangiemo* v. *Regan*, 528 F.2d 1262, 1265 (2d Cir. 1975), cert. denied sub nom. *DiGiangiemo* v. *Olgiatti*, 426 U.S. 950 (1976); *Rodriguez* v. *Beame*, 423 F. Supp. 906, 908 (S.D.N.Y. 1976). See Restatement (Second) of Judgments § 68, Comment j and § 68.1(b) and Comment on clause (b) (Tent. Draft No. 4, 1977).

of course, is that collateral estoppel applies to erroneous judgments as well as to correct ones, and the party sought to be precluded must, in fairness, have the right to correct the error on appeal.[3] Without that right, there is no preclusion. Restatement (Second) of Judgments § 68.1(a) and Comment on clause (a) (Tent. Draft No. 4, 1977). See *Rudow* v. *Fogel*, 376 Mass. 587, 591-592 (1978). Thus, if the principles of collateral estoppel applicable in civil proceedings were followed here, there is no question that the determination of the District Court judge would not be binding on the Commonwealth as it had no right to appeal.[4]

In criminal cases, however, this crucial aspect of collateral estoppel in civil proceedings must give way where mandated by the constitutional prohibition against double jeopardy, by the requirements of the due process clause, or by policy considerations. In such cases, the principles of collateral estoppel are applied against the Commonwealth even in the absence of a right of appeal. This is not such a case.

We first examine the defendant's claim that to deny collateral estoppel effect to the District Court judge's ruling is to place him in jeopardy for a second time contrary to the mandate of the Fifth Amendment to the United States Constitution as applicable to the States through the Fourteenth Amendment. In *Ashe* v. *Swenson*, 397 U.S. 436, 445 (1970), which held that principles of collat-

---

[3] The Restatement takes the position that it is enough that there be discretion in the appellate court to grant or deny review; "denials . . . are generally tantamount to a conclusion that the questions raised are without merit." Restatement (Second) of Judgments § 68.1, Comment on clause (a) (Tent. Draft No. 4, 1977).

[4] The possibility of review of interlocutory decisions in "exceptional" circumstances, see *Commonwealth* v. *Frado*, 372 Mass. 866 (1977), is not a right of appeal for purposes of collateral estoppel. As of July 1, 1979, the Commonwealth has a right to appeal to the Appeals Court from a decision of a District Court judge allowing a motion to suppress evidence. See G. L. c. 278, § 28E, as appearing in St. 1979, c. 344, § 45. See also Mass.R.Crim.P. 15(a)(2) (1979), 378 Mass. 882 (1979).

eral estoppel are embodied in the Fifth Amendment guaranty against double jeopardy, those principles, taken in the most favorable reading to the defendant there, were used to protect a defendant from multiple prosecutions for different "offenses" based on a "single alleged criminal transaction." *Id.* at 445 n.10. We are not dealing here with a single transaction. The felony with which the defendant is charged occurred in Somerville on October 7, 1977; the misdemeanor of which he was acquitted allegedly occurred in Malden on October 6, 1977. Not only are there two offenses,[5] but they do not involve the same set of facts. The only common link between the two is the allegedly illegal attic search by the police. Since the offenses charged happened at different times and places, no jeopardy considerations are applicable here. See *State v. Doucet*, 359 So. 2d 1239, 1247 (La. 1978). Compare *United States ex rel. DiGiangiemo v. Regan*, 528 F.2d 1262, 1266 (2d Cir. 1975), cert. denied sub nom. *DiGiangiemo v. Olgiatti*, 426 U.S. 950 (1976) (hypothetical example posed by Judge Friendly where *Ashe v. Swenson* "seemingly" would prevent relitigation where there were two different offenses but both occurred at the same time and place). In addition, the question of the legality of the search never impinged on the merits of either charge. Contrast *United States v. McKim*, 509 F.2d 769, 775 (5th Cir. 1975) (where there were two different offenses but the prior determination was of a matter crucial to the substance of the second offense).

---

[5] The complaint which was dismissed for no probable cause also involved a different offense. But no jeopardy attached in that action and, therefore, there is no question of the application of Fifth Amendment considerations in relation to that offense. There is also no collateral estoppel as the dismissal of the complaint for that offense was not a final judgment. *Burke v. Commonwealth*, 373 Mass. 157 (1977). *People v. Prewitt*, 52 Cal. 2d 330, 340 (1959). *McGrath v. Gold*, 36 N.Y.2d 406, 412 (1975). *State v. Greenwood*, 565 P.2d 701, 703 (Okla. Crim. App. 1977). See *Maldonado, petitioner*, 364 Mass. 359, 363 (1973).

We next turn to the question whether there are due process considerations here which preclude relitigation of the illegality of the attic seizure. In deciding whether an issue is foreclosed in civil cases where due process is not involved (see *United States ex rel. DiGiangiemo* v. *Regan, supra* at 1266) a court is involved in "a balancing of important interests: on the one hand, a desire not to deprive a litigant of an adequate day in court; on the other hand, a desire to prevent repetitious litigation of what is essentially the same dispute." Restatement (Second) of Judgments § 68, Comment c (Tent. Draft No. 4, 1977). In criminal cases additional interests of at least equal importance are involved, and it has been suggested that the possibility of harassment, the disparity of resources between the State and a criminal defendant, and the strain of a second prosecution in which the same nonjeopardy issues would be relitigated, make a strong case for the application of collateral estoppel against the State as a matter of due process. See *United States ex rel. Hubbard* v. *Hatrak*, 588 F.2d 414, 417 (3d Cir. 1978); Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv. L. Rev. 1, 31-33, 40-41 (1960).

These considerations led Judge Friendly, in writing for the court, to answer the question left open in *Hoag* v. *New Jersey*, 356 U.S. 464 (1958), and to state in dictum that collateral estoppel in criminal cases involves elements of due process. More particularly, the court concluded that due process would forbid the relitigation by a State of the issue determined adversely to it on a suppression hearing if the State had an opportunity for a full hearing and at least one appeal as of right. *United States ex rel. DiGiangiemo* v. *Regan*, 528 F.2d at 1265-1266.[6] These conditions are not satisfied here.

---

[6] This view has not always been followed. In *State* v. *Doucet*, 359 So. 2d 1239 (1978), Louisiana first adopted this position but on rehearing rejected it on the ground that the price exacted for applying collateral estoppel in such cases was too high. "[T]he price is that sometimes erroneous rulings are perpetuated that frustrate, rather than advance, justice. Due process (fundamental fairness) may be afforded the

We also do not consider this a case in which, in the absence of constitutional requirements, the analogy to collateral estoppel in civil cases should be "indulged" because of other policy considerations. See *Maldonado, petitioner*, 364 Mass. 359, 363 (1973). Harassment is not a factor here, and there is no hint that this prosecution was brought to evade the consequences of the earlier adverse Malden ruling. *United States ex rel. DiGiangiemo* v. *Regan*, 528 F.2d at 1269. See *Cook* v. *State*, 281 Md. 665, 672 (1978). Contrast *United States* v. *McKim*, 509 F.2d at 775. There is also no fear, by reason of failing to apply collateral estoppel, that an innocent defendant will be incarcerated or that the integrity of the judicial system will be compromised by inconsistent verdicts. Contrast *State* v. *Gonzalez*, 75 N.J. 181, 194-195 (1977), and *People* v. *Taylor*, 12 Cal. 3d 686, 698 n.17 (1974) (where the court left open the question whether collateral estoppel is applicable when a State alleges that a prior verdict of acquittal was based on erroneous rulings which it was unable to correct through appellate review).

On the other hand, the "truth-seeking" function of the criminal justice system (see *State* v. *Gonzales, supra* at 194) is served by an ability to appeal from an erroneous ruling, and the Supreme Judicial Court has stressed the importance of such an appeal before giving effect to prior determinations. Thus in *Burke* v. *Commonwealth*, 373 Mass. 157 (1977), the court refused to hold that a finding by a District Court judge of no probable cause was a final determination with preclusive effect. The court, in not following the Model Code of Pre-Arraignment Procedure § 330.7(2) (1975), noted that the code carefully provided for the prosecutor's right to appeal from an adverse deter-

accused although the application of collateral estoppel in this State is limited to those cases where it is required by *Ashe* v. *Swenson*." *State* v. *Doucet, supra* at 1248. See also *United States ex rel. Hubbard* v. *Hatrak*, 588 F.2d 414, 419 (3d Cir. 1978), where the court neither approved nor disapproved Judge Friendly's suggestion that due process requires the recognition of collateral estoppel.

mination. The importance of review in giving unity and coherence to criminal procedure and in making sure that serious crimes are not erroneously foreclosed from prosecution were crucial factors to its decision. See also *Rosenberg* v. *Commonwealth*, 372 Mass. 59 (1977), and Mayers & Yarbrough, *supra* at 33.

We note that, at the time of these proceedings, G. L. c. 278, § 28E, as amended by St. 1972, c. 740, § 16, only permitted the Commonwealth to appeal from the allowance of motions to suppress in the Superior Court.[7] In view of this limitation and in view of the legislative allocation of jurisdiction between the District and Superior Courts, we do not believe it was intended that nonappealable rulings of a District Court should be binding in proceedings in the Superior Court for offenses such as the Somerville felony over which District Courts have no jurisdiction. See *Commonwealth* v. *McCan*, 277 Mass. 199, 205 (1931); *Commonwealth* v. *Jones*, 288 Mass. 150, 152 (1934); *Commonwealth* v. *Mahoney*, 331 Mass. 510, 514 (1954); *Commonwealth* v. *Lovett*, 374 Mass. 394, 397-398 (1978); *Commonwealth* v. *Nazzaro*, 7 Mass. App. Ct. 859, 860 (1979). See also Restatement (Second) of Judgments § 68.1(c), Comment on clause (c) (Tent. Draft No. 4, 1977).

Cases in other jurisdictions relating to motions to suppress also stress the importance of the right of appeal. Although these cases address the question whether the allowance of a motion to suppress is itself a final order entitled to collateral estoppel effect rather than the question of the binding nature of an order made in the course of a trial in which the defendant was acquitted, the function served by appellate review for purposes of collateral estoppel is similar in both situations. Cf. *Laughlin* v. *United States*, 344 F.2d 187, 190-191 & n.15 (D.C. Cir. 1965). Compare Restatement (Second) of Judgments § 68, Comment (c) and § 68.1, Comment on clause (a) (Tent.

---

[7] See note 4, *supra*.

Draft No. 4, 1977) with § 41, Comments (b) and (g) (Tent. Draft No. 1, 1973). Cases noting the importance of appellate review in giving finality and binding effect to the allowance of motions to suppress are: *United States ex rel. Giangiemo* v. *Regan*, 528 F.2d at 1265-1266; *People* v. *Williams*, 59 Ill. 2d 557, 562 (1975); *State* v. *Gonzalez*, 75 N.J. 181, 195 (1977); *State* v. *Stahley*, 12 Or. App. 579, 580-581 (1973); *State* v. *Swain*, 267 Or. 527, 531 (1974). Where there is no right of appeal and jeopardy has not attached, rulings on motions to suppress have been held to be nonfinal and hence not binding in subsequent criminal proceedings. *Cook* v. *State*, 281 Md. at 674-675. *State* v. *Stahley*, 7 Or. App. 464, 467 (1971). *State* v. *Kangiser*, 8 Or. App. 368, 371 (1972). (Oregon subsequently provided an appeal.) See also *Watts* v. *United States*, 402 F.2d. 676, 685 (D.C. Cir. 1968), reversed on other grounds, 394 U.S. 705 (1969).

For these reasons, we hold that in this nonjeopardy situation the ruling of the District Court judge, which could not be appealed, is not binding on the Superior Court.

We turn next to the question of the validity of the attic search. As indicated earlier, the building was described in the search warrant as a two-story building, and a search was authorized of the entire apartment located on the second floor above Vincent's business establishment. The entrance to the apartment was on the first floor, and the only means of access to the attic was through the apartment. The attic was not a common area but was part of the apartment. The third floor was not evident from the street, and the warrant described the place to be searched in accordance with the officer's observations of the outward appearance of the building. See *Commonwealth* v. *Rugaber*, 369 Mass. 765, 767 (1976). Under these circumstances we hold that the search of the attic was proper and consider this case to be closer on its facts to *United States* v. *Evans*, 320 F.2d 482, 483 (6th Cir. 1963), *United States* v. *Principe*, 499 F.2d 1135, 1137 (1st Cir. 1974), and

*United States* v. *Palmisano,* 386 F. Supp. 599, 599-600 (E.D. Wis. 1974), than to *Commonwealth* v. *Hall,* 366 Mass. 790, 798-800 (1975). The seizure of the drugs in the attic was not invalid. *Commonwealth* v. *Bond,* 375 Mass. 201, 206-207 (1978).

We have examined the transcript and conclude that the other claims of the defendant are without merit. The defendant's contention that his motion for a directed verdict should have been granted is foreclosed under the standards set forth in *Commonwealth* v. *Campbell,* 375 Mass. 308, 311-313 (1978), and *Commonwealth* v. *Nichols,* 4 Mass. App. Ct. 606, 612-614 (1976), by *Commonwealth* v. *Ellis,* 356 Mass. 574, 578-579 (1970) (heroin charge), and *Commonwealth* v. *Rugaber,* 369 Mass. 765, 770 (1976). His contention that the indictment should have been dismissed is foreclosed by *Commonwealth* v. *Robinson,* 373 Mass. 591, 592 (1977).

*Judgment affirmed.*